## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

JEROME ALLEN BARGO                                        PLAINTIFF
ADC #75423

v.                        No: 5:17-cv-00281 KGB-PSH

WENDY KELLEY, *et al.*                                    DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I.  Introduction

Plaintiff Jerome Allen Bargo, an inmate at the Arkansas Department of Correction's ("ADC") Varner Unit, filed a complaint pursuant to 42 U.S.C. § 1983 on October 31, 2017, alleging that he was denied appropriate dental care in violation

of the United States Constitution and Arkansas law (Doc. No. 2).  Bargo sued ADC Director Wendy Kelley, Correct Care Solutions (CCS), dentist Dr. Steven Stringfellow,[1] and John Does.  *Id.*  After conducting discovery, Bargo identified John Doe A and John Doe B as Defendant Kelley.  *See* Doc. Nos. 63 & 67.  Bargo later clarified certain allegations in his complaint after conducting discovery.  *See* Doc. Nos. 92 & 100.  Bargo sues defendants in both their official and individual capacities.  Doc. No. 2 at 2.  He seeks injunctive relief and money damages.  Doc. No. 2 at 9-11.

The Court previously determined that Bargo exhausted available administrative remedies with respect to the following claims:

1) Bargo's claim that Kelley restricted his access to adequate dental hygiene supplies;

2)  Bargo's claim against Dr. Stringfellow based on a delay in treatment after his January 31, 2017 appointment; and

3) Bargo's claim against Kelley and CCS for not providing root canals and crowns.

---

[1] From July 2016 through May of 2017, Correct Care Solutions provided dental care to the Varner Unit through the services of Dr. Stringfellow, who was on site at the Varner Unit twenty hours per week and on call along with the Regional Dental Director twenty-four hours a day.  *See* Doc. No. 126 at 4; Doc. No. 125-4.  Dental services were provided through other dentists after May 2017.

Doc. Nos. 72, 80, 81 & 83. All other claims against CCS and Stringfellow were dismissed. Doc. No. 83.

Before the Court is a motion for summary judgment, brief in support, and statement of undisputed facts filed by Kelley (Doc. Nos. 105-107), along with Bargo's response, brief in support, and statement of undisputed facts (Doc. Nos. 120-122). Also before the Court is a motion for summary judgment, brief in support, and statement of undisputed facts filed by CCS and Dr. Stringfellow (Doc. Nos. 108-110), along with Bargo's response, brief in support, and statement of undisputed facts (Doc. Nos. 123-125). CCS and Dr. Stringfellow filed a reply (Doc. No. 126).

For the reasons described herein, the undersigned recommends that defendants' motions for summary judgment be granted.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann*

*v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.  Facts

The following undisputed facts are taken from those submitted by the parties (*see* Doc. Nos. 107, 109, 122, 124 & 126) and the following documentary evidence:

Bargo's relevant dental and medical records (Doc. No. 109-1); Bargo's deposition testimony transcript (Doc. No. 109-2); the affidavit of Susan McDonald, D.D.S. (Doc. No. 109-3); and a copy of grievance VU-17-00303 (Doc. Nos. 125-1 – 125-2). Disputed facts are noted.

### Bargo's Dental Care

Bargo has been incarcerated with the ADC for approximately 14 years. Doc. No. 109-2 at 75. This lawsuit concerns disagreement over the treatment Bargo requests for teeth numbers 13 and 14, which have been recommended for extraction. Doc. No. 2. Bargo has refused to agree to extraction of teeth numbers 13 and 14 unless extraction is "the only viable solution in the dentistry." Doc. No. 109-2 at 46. Bargo instead demands that root canals and crowns be provided for those teeth, if such treatment is viable. *Id.* at 46-47. Bargo currently has all of his 32 teeth, including four wisdom teeth. *Id.* at 48-49 & 75. Excepting teeth numbers 13 and 14, Bargo's teeth are in good condition. Doc. No. 109-1; Doc. No. 109-2 at 49. He has not required any dental fillings while incarcerated at the Varner Unit. Doc. No. 109-2 at 52.

Bargo's dental records indicate that he first reported having pain in tooth number 14 on February 29, 2012. Doc. No. 109-1 at 35. Dr. Johnny Canady examined Bargo and recommended extraction of tooth number 14, noting that the

canals of the tooth appeared to be calcifying. *Id.* Dr. Canady documented that Bargo declined to have the tooth pulled. *Id.*

On August 2, 2016, Bargo requested treatment for the "reoccurrence of pus filled pimple on gum in exact same spot." Doc. No. 109-1 at 3. Two days later, Dr. Michael Dienberg examined Bargo and noted:

> Reviewed medical history with patient. Concerns include NCPMH, NKDA, #14 recurrent decay is present and may be restorable. Tooth may be abscessed, fistula and/or cyst may be present. Place on restorative list #14, if remove existing restoration and decay is extensive, then extract tooth. Offered antibiotics, but pt. refused.

*Id.* at 6-7.[2] The dental records do not indicate whether Bargo was scheduled for this attempted restoration.

Bargo did not see a dentist again until January 2017. On January 14, 2017, he requested to be seen for a "reoccurrence of abscess on gum." *Id.* at 8. Bargo stated that he saw a dentist several months before and was told he would be rescheduled but had not been. *Id.* Bargo was examined by Dr. Steven Stringfellow on January 31, 2017. *Id.* at 9. Dr. Stringfellow noted that "#14 had a large fistulous tract," that

---

[2] Bargo maintains that Dr. Dienberg noted the need to take an x-ray but could not because there was no nurse assistant there that day; CCS and Dr. Stringfellow deny that it was necessary to take an x-ray to diagnose an abscessed tooth and recommend extraction. *See* Doc. No. 126-6. The Court finds this dispute to be immaterial. Dr. Dienberg recommended that Bargo receive a filling if one was feasible; if not, he recommended extraction. Dr. Dienberg is not a defendant in this case, and none of Bargo's remaining claims concern the failure to obtain an x-ray at the August 2016 encounter with Dr. Deinberg.

a "PA radiograph shows lesion at apex," and that "decay is present and is not restorable." *Id.* Dr. Stringfellow further noted that Bargo should be started on medication and placed on a surgery list for extraction of #14. *Id.* Dr. Stringfellow also informed Bargo that he should submit a request form if he desired further treatment. *Id.* Bargo insists that Dr. Stringfellow attempted to take x-rays but was unsuccessful; CCS and Dr. Stringfellow maintain that x-rays were taken on this date. Doc. No. 109-2 at 93-98; Doc. No. 126 at 7. CCS and Dr. Stringfellow acknowledge that the x-ray film they claim was taken during this encounter with Dr. Stringfellow is not in Bargo's dental chart. Doc. No. 126 at 7. The dental records do not indicate that Bargo was placed on the surgery list for extraction.

Bargo submitted grievance VU-17-00303 on April 19, 2017, stating that that he was treated by an unknown dentist "about a year ago" at his annual dental cleaning and once again "after weeks or months without being called back." Doc. No. 125-1. With respect to his second visit, Bargo stated,

> When I stated what the other Dentist had said he examined the tooth/abscess and decided to take xrays. However, three (3) attempts were made to take xrays but resulted in nothing. I was prescribed antibiotics and told I'd be rescheduled at which time the xray would be working. Now, months later I'm still waiting and still in pain. The Dentist also said the tooth could be saved by doing a root canal but that CCS prohibited such treatment. . . .

*Id.* Bargo proceeded to Step Two, and the Health Services Administrator ("HSA") responded on May 17, 2017. Doc. No. 125-2 at 1. The HSA acknowledged that

Bargo was seen in August 2016 by Dr. Deinburg and again in January 2017 by Dr. Stringfellow who placed Bargo on the procedure list for extraction. *Id.* Because Bargo had not yet received the procedure, the HSA found Bargo's grievance to be with merit and informed Bargo that he would be scheduled for a dental procedure. *Id.* On July 13, 2017, Bargo's appeal was found to be with merit due to a delay in his treatment after the HSA's response. *Id.* at 2. The appeal response stated that the issue was resolved, however, because Bargo was subsequently seen by Dr. James Dove, as described below.

On June 6, 2017, Dr. Dove examined Bargo and noted that "tooth #14 is nonrestoable [sic] due to infection" and that extraction is the "only offered remedy." Doc. No. 109-1 at 13-14. Bargo's teeth were cleaned on June 8, 2017 by dental hygienist Bailey Cover Dietrich, who noted that "Pt has gingivitis and/or perio disease and needs full mouth debridement or perio scaling." *Id.* at 14.

On July 5, 2017, Dr. Dove saw Bargo at his scheduled surgery appointment. *Id.* at 16. Dr. Dove noted "Pt. appointed for extraction of tooth #14. Pt. questions extraction at this time. Pt. states small 'pimple' is present." *Id.* Dr. Dove also noted: "Radiograph taken of upper left quadrant. Teeth #'s 13 and 14 are non restorable and both should be extracted, due to history of abscess and on tooth #13 recurrent decay on mesial and distal root surfaces." *Id.* Dr. Dove's notes also indicate that

Bargo refused treatment and was told to return to the clinic to have the teeth extracted. *Id.* Dr. Dove noted:

> Pt. informed extraction is only treatment for teeth #'s 13 and 14. Pt. understands the risks of delaying extractions. Advised patient to contact infirmary if area becomes painful or swollen. Informed patient of recommended treatment. If patient desires further treatment, a request form should be submitted.

*Id.* Dr. Dove noted in an addendum on December 6, 2017 (more than 5 months later):

> This Pt. refused treatment, but also refused analgesic therapy, denying that the "pimple" hurt. Pt. refused all treatment at this time and repeated he was not suffering or in pain, he just did not want his back teeth extracted. Pt. was reminded of the risks of refusing therapeutic analgesics, antibiotics, and extraction of non restorable teeth. Pt. also informed not all teeth can be "saved" with fillings or root canals. These teeth are badly fractured and the prognosis of any treatment other than extractions is very poor.

*Id.* Bargo testified in his deposition that he intended to have tooth #14 extracted at this appointment, but once Dr. Dove told him that he also needed to have tooth #13 extracted, Bargo refused and insisted on having an x-ray taken. Doc. No. 109-2 at 60-61. He acknowledged that x-rays were then taken but he still declined to have either tooth extracted. *Id.*

In March 2018, Dr. Nancy Malcolm examined Bargo and noted:

> PT has tooth #14 that is abscssed [sic] and needs to be extracted but is filing a lawsuit to get a root canal and is in the mindset that he will win. He would like to put off doing anything at this point in time. Pt admits that he has been having pus drain from the gums around this tooth. Area

is inflamed and swollen and tooth is (+++) to percussion and palpation.
PT that was taken previously does show tooth to be abscessed.

*Id.* at 22. Dr. Malcolm told Bargo that root canals were not provided for incarcerated

persons, and warned him that by putting off extraction, he may lose more bone and

risk infection of other teeth. *Id.*

### Dr. Susan McDonald's Opinion

Dr. Susan McDonald is a dentist employed by CCS. Doc. No. 109-3 at 1. She

executed an affidavit offering expert testimony regarding the dental issues at hand.

*Id.* Dr. McDonald reviewed Bargo's dental records from January 1, 2008 to the

present. *Id.* She agreed with Dr. Dove that because teeth numbers 13 and 14 are

badly fractured, the prognosis of any treatment besides extraction is poor. *Id.* at 2.

In her affidavit, Dr. McDonald noted that at all relevant times, Bargo was provided

with antibiotics and pain medication as appropriate. *Id.* In Dr. McDonald's opinion,

the issue in this case is the significant decay in teeth numbers 13 and 14. *Id.* She

explained that once bacteria enters the sterile field of the tooth and causes infection,

the teeth are no longer restorable. *Id.*

Dr. McDonald explained the process of a root canal, which is performed by

removing the nerve and blood vessels and then placing a filling material inside the

tooth. *Id.* A crown is then cemented on top of the remaining tooth structure which

functions as a dental prosthesis. *Id.* She stated that a root canal and crown are similar

to providing a one-tooth denture, because the tooth itself is no longer living. *Id.* In

Dr. McDonald's opinion, Bargo has no medical need for a prosthetic tooth, and he is able to masticate sufficiently. *Id*. According to Dr. McDonald, Bargo is placing himself at risk of further infection by refusing extraction of teeth numbers 13 and 14, and extraction of the teeth would promptly eliminate the infection. *Id.* at 2-3.

Dr. McDonald also explained in her affidavit that root canals and crowns are not a service that CCS is contracted to perform. *Id.* In addition, Dr. McDonald opined that even if CCS was contracted to perform root canals on inmates, a root canal and crown are not indicated in Bargo's case for either tooth. *Id.* She attached to her affidavit illustrations of a tooth, tooth decay, and a root canal procedure, and explained that Bargo's cavities affected the enamel, dentin, and the pulp, which contains the nerves and blood vessels. *Id.* Dr. McDonald stated that because the sterile field of both teeth was broken, and the nerves and blood vessels became infected, extraction was the appropriate remedy to prevent recurrent infection. *Id.* She further opined that the prognosis for a successful root canal and crown on the affected teeth is poor due to extensive destruction of the root structure in both teeth and the presence of calcified canals in tooth number 14.[3]  *Id.*

---

[3] Dr. McDonald did not offer an opinion concerning whether teeth numbers 13 and 14 would have been restorable by root canal and crown at the times Bargo was treated at the ADC in 2016, 2017, or March of 2018. Dr. Stringfellow has opined that tooth number 14 most likely was not restorable in January of 2017 (Doc. No. 121-3 at 3-4); Dr. Dove recorded that teeth numbers 13 and 14 were not restorable as of mid-2017 (Doc. No. 109-1 at 13-14).

In Dr. McDonald's professional opinion, the dental care and treatment provided to Bargo was appropriate and satisfactory during the relevant period of time. *Id*. She stated that her conclusion is consistent with sound dental practices and her professional judgment and her opinions are stated to a reasonable degree of medical certainty. *Id.*

Bargo does not offer any expert testimony in support of his position. He claims, however, that Dr. Stringfellow told him in January 2017 that tooth number 14 was restorable. See Doc. No. 107-1 at 100; Doc. No. 121-1.

### *Dental Hygiene Supplies*

In his deposition testimony, Bargo admitted that the toothpaste available to him at the ADC is approved by the ADA (American Dental Association), that it is good toothpaste, and that he does not have any problems with the toothpaste. Doc. No. 109-2 at 70-71 & 111. Bargo testified that he wants more choices of toothpaste, including one that is designed for sensitive teeth that also fights gingivitis. *Id.* at 71. Bargo also testified that he has access to dental floss and that he is able to use the dental floss on some of his teeth. *Id.* at 72-73 & 112. Bargo testified that the dental floss is designed like a rubber band and is not easy to use because it slips and causes his gums to bleed. *Id.* at 72-73. Bargo testified that he is provided a toothbrush that he uses but he does not like that the bristles fall out. *Id.* at 73-74 & 113. Bargo testified that he is able to reach and clean all of his teeth, including his wisdom teeth,

even though the toothbrush is too short, making it difficult to reach his back teeth. *Id.* at 74-75.

## IV. Analysis

### A.    Sovereign Immunity

Defendants correctly assert that Bargo's monetary claims against them in their official capacities are barred by sovereign immunity.  A suit against a defendant in his or her official capacity is in essence a suit against the State of Arkansas, and any official capacity claim for monetary damages against that defendant is barred by the doctrine of sovereign immunity.  *Will v. Michigan Department of State Police, et al.*, 491 U.S. 58, 71 (1989)*; Nix v. Norman*, 879 F.2d 429, 431-432 (8th Cir. 1989). Accordingly, the undersigned recommends that defendants be awarded summary judgment with respect to Bargo's official capacity claims for money damages. Bargo's official capacity claims for injunctive relief are discussed below.

### B.    Qualified Immunity

Defendants argue they are entitled to qualified immunity as to Bargo's claims against them in their individual capacities.  Qualified immunity protects government officials from liability for damages insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary

judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015).

> For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Id.* (citing *Mitchell v. Forsyth,* 472 U.S. 511, 535 n. 12, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). "But it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* (citations omitted). Petitioners can show a clearly established right through "cases of controlling authority in their jurisdiction at the time of the incident" or through a "consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne,* 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). The pertinent inquiry is whether the state of the law at the time gave the official "fair warning" that such conduct was unlawful in the situation he confronted. *Hope v. Pelzer,* 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

*Wright,* 813 at 695-96.  Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first

in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### *Legal Standard:  Eighth Amendment Deliberate Indifference*

The Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide adequate medical care to inmates in their custody. *Estelle v. Gamble,* 429 U.S. 97, 102–03 (1976).  An inmate's Eighth Amendment right to treatment for serious and painful dental conditions is well-established. *Williams v. York*, 891 F.3d 701, 707 (8th Cir. 2018).  To succeed with an inadequate medical care claim, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical needs. *Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir. 1997). This requires a two-part showing that (1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it. *Id.; see also Farmer v. Brennan,* 511 U.S. at 837; *Estelle v. Gamble,* 429 U.S. 97, 105 (1976).  "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir. 1997).

Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg*

by *Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). Finally, an inmate alleging that a delay in medical treatment constitutes deliberate indifference is required to "'place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment.'" *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)). If the inmate does not, he fails to raise a genuine issue of fact on an essential element of his claim, and summary judgment is appropriate. *Id. See also Corwin v. City of Independence, MO*, 829 F.3d 695 (8th Cir. 2016) (summary judgment appropriate where pretrial detainee failed to produce verifying medical evidence showing a detrimental effect due to delay in treating fractured wrist).

### Kelley – Dental Hygiene Supplies

In his complaint, Bargo alleges that ADC Director Kelley restricted his access to toothpaste, hard-bristle tooth brushes, and dental floss loops (similar to rubber bands) that are not approved by the American Dental Association ("ADA"). In his deposition, he admitted that the dental hygiene supplies provided by the ADC are in fact ADA approved and adequate to clean his teeth. He does not like the dental floss or the short hard-bristled tooth brushes, but acknowledges that he is able to reach the back of his teeth with those brushes and to floss albeit with some difficulty. He also acknowledges that all of his teeth are in good condition with the exception of teeth numbers 13 and 14. Bargo testified that he would like certain dental products that

are specifically designed for gingivitis.  Although a dental hygienist has indicated he may have some gum disease, Bargo has produced no evidence to show that the lack of these products contributed to or caused him to develop gum disease.  Because there is no evidence to show that Kelley was deliberately indifferent to Bargo's medical needs in choosing what dental hygiene supplies are available to inmates, Kelley is entitled to qualified immunity and this claim should be dismissed with prejudice.

### Dr. Stringfellow – Delay in Treatment

An abscessed tooth and tooth decay present serious medical needs.  *See, e.g.*, *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (court found serious medical need where plaintiff "presented evidence that he suffered extreme pain from loose and infected teeth, which caused blood to seep from his gums, swelling, and difficulty sleeping and eating").  Bargo asserts that Dr. Stringfellow was deliberately indifferent to his serious dental needs because he did not obtain x-rays at the January 31, 2017 appointment and did not schedule Bargo to re-take the x-rays or have surgery.  Dr. Stringfellow maintains that he took x-rays as documented in the medical record.  He also argues that he cannot be liable for any delay in scheduling Bargo's extraction because Bargo has stated that he would refuse extraction and would only accept a root canal as treatment.

17

There is a factual dispute as to whether x-rays were taken on January 31. The x-ray film is not in Bargo's dental records. Bargo maintains that Dr. Stringfellow's attempts to take x-rays were unsuccessful, and Dr. Stringfellow told him that he would be rescheduled to come back to try again. Bargo's contention is that if x-rays had been taken on January 31 or at a procedure scheduled shortly after that visit, he may be able to show that his teeth could have been restored with dental fillings at that time, even if the x-rays taken in July 2017 showed that his teeth were no longer restorable.

Assuming that Bargo's version of events is correct, he fails to provide any evidence that Dr. Stringfellow's claimed failure to obtain x-rays on January 31 or shortly after was due to deliberate indifference to Bargo's serious medical needs. According to Bargo's position, Dr. Stringfellow attempted to take x-rays at the January 31 appointment but his efforts were unsuccessful. At that point, says Bargo, Dr. Stringfellow told Bargo that he would be rescheduled to return for x-rays. At the January 31 appointment, Dr. Stringfellow addressed Bargo's dental needs. He either took or attempted to take x-rays, he noted decay and the need for an extraction, prescribed antibiotics, and stated that Bargo would be placed on the list for surgery.

It is undisputed that Bargo's follow-up appointment was not promptly scheduled,[4] and he was not seen again until June 2017. Bargo claims that the delay resulted from Dr. Stringfellow's failure to schedule the follow-up appointment, with deliberate indifference to Bargo's serious medical needs. This claim fails as a matter of law. The parties do not address whether Dr. Stringfellow was actually responsible for scheduling appointments or for placing a patient on a procedure list, or if such actions were the responsibility of another CCS employee. But even if Dr. Stringfellow was responsible for scheduling appointments or procedures, Bargo has offered no evidence that Dr. Stringfellow's failure to do so was because he was deliberately indifferent to Bargo's serious medical needs. At worst, under the facts submitted to the Court, Dr. Stringfellow's failure would constitute negligence.[5]   And as noted above, mere negligence does not amount to a constitutional violation.

Additionally, Bargo has the burden of proving with verifying medical evidence that the delay from January 31, 2017 to June 2017 was detrimental to his condition. Bargo has not provided any such evidence.

_____

[4] Bargo filed a grievance in mid-April complaining that he had not been seen again. In response, the HSA found Bargo's grievance to be with merit because he had not been seen even though Dr. Stringfellow had placed Bargo on the procedure list. *See* Doc. No. 125-2 at 2.

[5]The Court makes no finding regarding whether Dr. Stringfellow's actions or inactions amounted to negligence.

In sum, Bargo offers no evidence that Dr. Stringfellow intentionally or with deliberate indifference delayed his treatment or that he was harmed by the delay. The evidence in the record simply does not support a finding that Dr. Stringfellow was deliberately indifferent to Bargo's serious medical needs.  Dr. Stringfellow is therefore entitled to summary judgment on Bargo's delay-in-treatment claim.

### CCS & Kelley – Root Canals & Crowns

Bargo insists that he should be provided a root canal and crown in lieu of extraction, and that the policy not to provide root canals deviates so far from normal standards as to amount to deliberate indifference.  In *Smith v. Jenkins*, the Eighth Circuit held that evidence of deliberate indifference can be established by showing that the course of treatment "so deviated from professional standards that it amounted to deliberate indifference in violation of [the defendant's] eighth amendment right to be free from cruel and unusual punishment."  919 F.2d 90, 93 (8th Cir. 1990).  The Eighth Circuit acknowledged, however, that proof that a course of treatment deviated from professional standards requires expert testimony. *Id*.  The Court notes that Bargo has offered no expert opinion that a failure to provide root canals and crowns to him constituted such a deviation from professional standards that it amounted to deliberate indifference.

The majority of courts examining this issue have found that a prison's refusal to restore a tooth rather than extract it is not an Eighth Amendment violation *if*

extraction is a medically appropriate treatment for the prisoner.[6]  The United States

District Court for the District of North Dakota has thoroughly described the relevant

case law:

> [I]t appears that the cases in which the courts have actually held an "extraction only" policy to be unconstitutional are few. One case that is frequently cited is *Heitman v. Gabriel,* 524 F.Supp. 622 (W.D. Mo.1981) ("While it is by no means unprecedented for an old-fashioned prison regime to offer tooth extraction as the 'only dental care' [citation omitted] no case has been found where such a limitation has been deemed judicially tolerable."); *see Stack v. McCotter,* 79 Fed. App'x 383, 389.4 (10th Cir. 2003) (citing *Heitman*); Michel B. Mushlin, 1 *Rights of Prisoners* § 4.14 (4th ed., database updated Oct. 2010) (same). *Heitman,* however, is an extreme case.  There a county jail had refused to provide *any* dental care short of extraction—not even routine dental fillings when that would suffice to alleviate an inmates' pain.
>
> There are other cases, however, where the courts have suggested that "extraction only" policies might violate the Eighth Amendment—in certain circumstances, or have concluded that the issue is an open one. *See, e.g., Chance v. Armstrong,* 143 F.3d 698, 703–704 (2d Cir. 1998); *Mitchell v. Liberty,* No. 8–341–B–W, 2009 WL 33435, at * *4–5 (D. Me. 2009). One notable case is the Second Circuit's decision in *Chance, supra,* where the court overturned a summary dismissal of a § 1983 action in which a prisoner had alleged that his Eighth Amendment rights had been violated when extraction was the only treatment offered, and according to the prisoner, "there were less invasive procedures that would have saved his teeth." *Id.* at 704.  Without making a definitive ruling, the Second Circuit suggested that extraction might be constitutionally deficient if it was offered simply because it was an "easier and less efficacious treatment" and was not based upon

---

[6] In applying qualified immunity, the Eighth Circuit Court of Appeals subscribes to "a broad view of the concept of clearly established law, and we look to all available decisional law, including decisions from other courts, federal and state, when there is no binding precedent in this circuit."  *Turner v. Arkansas Ins. Dep't*, 297 F.3d 751, 755 (8th Cir. 2002); *Vaughn v. Ruoff*, 253 F.3d 1124, 1129 (8th Cir. 2001).

the exercise of sound medical judgment. *Id.* at 703. One of the cases that the court cited as authority was *Dean v. Coughlin,* 623 F. Supp. 392 (S.D.N.Y.1985), which the court characterized as "holding that 'dental needs for fillings, *crowns* and the like—are serious medical needs as the law defines that term.'" *Chance,* 143 F.3d at 703 (quoting *Dean,* 623 F. Supp. at 404) (emphasis added). On the other hand, a number of courts have held that prison policies that offer extraction in lieu of such things as crowns, implants, and even root canals in certain situations do not violate the Eighth Amendment. *E.g., James v. Pennsylvania Dept. of Corrections,* 230 Fed. Appx. 195, 2007 WL 1231730, *1–2 (3d Cir. 2007) (unpublished *per curiam* decision) (concluding that there was no Eighth Amendment claim for an extraction that was within the policy of providing for extractions and not root canals for abscessed teeth, and the decision was not based on any ulterior motive other than routine patient care); *Koon v. Udah,* No. 8:06–2000, 2008 WL 724041, at *7 (D.S.C. Mar. 17, 2008) (no Eighth Amendment violation where prison offered extraction only and not a root canal and crown at state expense based on prison policy); *Wilkens v. Ward,* No. Civ–05–254–M, 2007 WL 2407082, at *6–7 (W.D. Okla. Aug. 22, 2007) (no Eighth Amendment violation where prisoner was refused a root canal and offered extraction only pursuant to prison policy); *Del Muro v. Federal Bureau of Prisons,* No. 5:03–CV–214–B, 2004 WL 1542216, at * 3–4 (N .D. Tex. July 8, 2004) (no Eighth Amendment violation where the prisoner was offered extraction only pursuant to prison policy and not the crowns or a bridge that he claimed he was entitled to); *Kopera v. Cook County Bd. of Com'rs,* 1994 WL 577238, No. 93–C–3934, at *5 (N.D. Ill. Oct. 18, 1994) (rejecting an inmate's constitutional challenge to a prison policy whereby only extraction services are provided); *see also Brathwaite v. Corr. Med. Servs.,* 630 F. Supp. 2d 413 (D. Del. 2009).

Also, there are courts that have held that extraction in lieu of restorative work did not violate the Eighth Amendment, but it is not clear from the facts of those cases whether the offer of extraction was based upon a determination that it was an appropriate treatment under the prisoner's particular circumstances or a blanket prison policy. *E.g., McQueen v. Karr,* 54 Fed. Appx. 406 (table), 2002 WL 31688891, at *1 (5th Cir. 2002) (unpublished per curiam); *Campbell v. St. Clair County Jail,* 2:08–cv–10224, 2008 WL 186376, at *2 (E.D. Mich. Jan. 22, 2008).

The Eighth Circuit has yet to explicitly weigh in on this issue. In *Moore v. Jackson,* 123 F.[3]d 1082 (8th Cir. 1997), the court overruled a district court's grant of summary judgment in favor of prison officials and allowed a prisoner's Eighth Amendment claim to proceed in a case where treatment for a troubled tooth had been unreasonably delayed. In its discussion of the seriousness of the prisoner's medical condition, the court noted that, in addition to the evidence of pain suffered by the prisoner during the delay in treatment, there was also evidence that the delay eliminated the possibility of restoring the tooth and ensured extraction. *Id.* at 1087 n. 3.

In *Davis v. Norris,* the court affirmed the dismissal of an inmate's claim that jail staff had exhibited deliberate indifference to his serious dental needs by denying him a root canal. *Davis v. Norris,* 198 F.3d 249 (Table), 1999 WL 1006437, at *1 (8th Cir. 1999). However, the dispute in that case centered not on a particular jail policy but rather competing recommendations from two dentists; one examining dentist had recommended a root canal and while the other had recommended an extraction. The Eighth Circuit simply concluded that a disagreement over a particular type of treatment did not give rise to an Eighth Amendment claim.

A dispute over the constitutionality of a jail's extraction-only policy was front and center in *Meuir v. Greene County Jail Employees,* 487 F.3d 1115, 1119 (8th Cir. 2007). There an inmate asserting a claim of deliberate indifference to his dental care sought to end the Greene County Jail's unwritten extraction-only policy. The Eighth Circuit observed that, prior to filing suit, the inmate had been transferred from the Greene County Jail to another facility where his dental ailments had apparently been treated without complaint.  Given that the inmate did not anticipate ever returning to the Greene County Jail, the court concluded he had not demonstrated a likelihood of future injury and therefore lacked standing to challenge the extraction-only policy.

Based on the foregoing, it is apparent that there is no "clearly established" right on the part of prisoners to dental treatment in the form of crowns and implants in lieu of extraction, particularly when the latter appropriately resolves the underlying problem and does not unduly compromise the prisoner's health.

*Greywind v. Podrebarac*, No. 1:10-CV-006, 2011 WL 4750962, at *6–8 (D.N.D. Sept. 12, 2011), *report and recommendation adopted*, No. 1:10-CV-006, 2011 WL 4743751 (D.N.D. Oct. 5, 2011), *aff'd*, 471 F. App'x 544 (8th Cir. 2012).

Numerous more recent cases outside of the Eighth Circuit hold that a prison's refusal to provide root canals in lieu of extraction is not a constitutional violation. *See e.g., Mathews v. Raemisch,* 513 F. App'x 605, 607 (7th Cir. 2013)*; Baughman v. Garcia*, 254 F. Supp. 3d 848, 877–78 (S.D. Tex. 2017); *Kleser v. Rosenthal*, No. 15-CV-602, 2016 WL 3982471, at *4 (E.D. Wis. July 22, 2016); *Gomez v. Westchester Cty.*, No. 12-CV-6869 RA, 2015 WL 1054902, at *11 (S.D.N.Y. Mar. 10, 2015), *aff'd sub nom. Gomez v. Cty. of Westchester*, 649 F. App'x 93 (2d Cir. 2016); *Mounce v. Doe*, No. CIV.A. 12-669, 2014 WL 2587698, at *32 (E.D. La. June 10, 2014).

In light of the case law cited above, the Court finds that CCS and Kelley are entitled to qualified immunity on this claim.   First, Bargo has offered no expert opinion that a failure to provide root canals and crowns to him constituted such a deviation from professional standards that it amounted to deliberate indifference. Also, there is no evidence before the Court that extraction was not a medically appropriate treatment for Bargo under the circumstances.   In fact, the record supports a finding that extraction was and is a medically appropriate treatment for Bargo, would resolve the problems the affected teeth are causing, and would not

24

compromise his health.   It is undisputed that Bargo's other teeth are in good condition, and he will still be able to eat if the infected teeth are extracted.  Bargo's medical records establish that several dental providers over years of treatment determined that extraction of his abscessed teeth was an appropriate treatment and would resolve his recurrent infections.   And Dr. McDonald opined that the treatment provided to Bargo was appropriate.  Accordingly, the Court finds that extraction was a medically appropriate treatment option for Bargo, and the policy to provide Bargo with extraction instead of a root canal under the facts presented does not amount to deliberate indifference in violation of the Eighth Amendment.[7]

Further, even if this Court found that the facts alleged by Bargo establish a violation of a constitutional right, the defendants are still entitled to qualified immunity.  As recognized in *Greywind*, the right of prisoners to dental treatment in the form of crowns and implants in lieu of extraction has not been "clearly established," now or at the time of the alleged misconduct, especially when an extraction would appropriately resolve the underlying problem and would not unduly compromise the prisoner's health.   The Court believes that the case law has also not clearly established the existence of a right of an inmate to root canals and crowns in lieu of extraction.  Based on the state of the case law, then, CCS

_____

[7] *See Davis v. Norris, supra* (a disagreement over a particular type of treatment does not give rise to an Eighth Amendment claim).

and Kelley were not on notice, and thus did not have "fair warning," that Bargo's claimed right to root canals and crowns had been clearly established, and a policy that did not allow such treatment was unlawful.

For these reasons, CCS and Kelley are entitled to qualified immunity under both prongs of the qualified immunity analysis. They should be awarded summary judgment on Bargo's claims regarding the policy not to provide inmates with root canals, and those claims should be dismissed with prejudice.

## C.     Injunctive Relief

Sovereign and qualified immunity do not apply to Bargo's remaining claims for injunctive relief. *See Mead v. Palmer*, 794 F.3d 932, 937 (8th Cir. 2015); *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007). Bargo seeks "appropriate dental treatment" including root canals, crowns, and treatment of gum diseases," as well as "ADA approved toothbrushes and dental floss . . .". Doc. No. 2 at 10. As discussed above, Bargo has access to appropriate dental hygiene supplies and his constitutional claims on that issue fail. Likewise, Bargo has not shown a constitutional violation with respect to the policy of not providing root canals in lieu of extraction. If there is no constitutional violation, there is no necessity for injunctive relief. *See Falls v. Nesbitt*, 966 F.2d 375, 380 (8th Cir. 1992). Bargo's claims for injunctive relief should therefore be dismissed.

**D.    State Law Claims**

Because Bargo's constitutional claims are subject to dismissal, the Court should decline to exercise jurisdiction over his state law negligence claims.  *See Gibson v. Weber*, 433 F.3d 642, 647 (8th Cir. 2006) (Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed).

## V.   Conclusion

For the reasons stated herein, Bargo's official capacity claims for money damages should be dismissed, Bargo's claims for injunctive relief should be dismissed, and the defendants are entitled to qualified immunity on Bargo's other claims.  The undersigned recommends that the defendants' motions for summary judgment (Doc. Nos. 105 & 107) be granted.  Bargo's constitutional claims should be dismissed with prejudice.  Further, the Court should decline to exercise supplemental jurisdiction over Bargo's state law negligence claims and dismiss those claims without prejudice.

SO RECOMMENDED this 23rd day of January, 2020.


_____
UNITED STATES MAGISTRATE JUDGE

27